UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO: 4:24-CR-1 |
| | ) | |
| AUSTIN MICHAEL BURAK | ) | |

**UNITED STATES'** *UNOPPOSED* **MOTION FOR RULE 15 DEPOSITION OR ALTERNATIVELY, A TRIAL CONTINUANCE**

The United States of America, by and through the undersigned Assistant United States Attorneys, files this ***unopposed*** motion to take a Federal Rule of Criminal Procedure 15 deposition of an unavailable material witness, identified herein as Victim #2, or in the alternative, a trial continuance (***opposed***), and in support thereof, avers as follows:

**I.     PROCEDURAL HISTORY**

On January 10, 2024, a grand jury in the Southern District of Georgia indicted and charged Defendant with attempted coercion and enticement of a minor, in violation of Title 18, United States Code, Section 2422(b) (Count One); abusive sexual contact of a minor, and attempt in violation of Title 18, United States Code, Section 2244(a)(5) (Count Two); coercion and enticement of a minor to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b) (Count Three); and aggravated sexual abuse of a minor, and attempt, in violation of Title 18, United States Code, Section 2241(c) (Count Four). A superseding indictment was returned on March 6, 2024; there were no substantive changes in the offenses charged. Doc.

26. On April 3, 2025, the Court issued a Criminal Trial Management Order. Doc. 118. Trial is scheduled to begin on May 13, 2025. *Id*.

## II. SUMMARY OF FACTS

In August 2017, after a night of drinking, the Defendant sexually assaulted two minor children, referred to herein as MV1 (9 years old) and MV2 (13 years old), including anally penetrating MV2 with his penis. During MV1's assault, the Defendant asked MV1 if he "trusted him?" Prior to MV2's assault, he gave MV2 a cup of juice containing alcohol and told him to drink it. During the sexual assault of MV2, the Defendant told MV2 to "calm down, nothing was going to happen," The Defendant further told MV2 that "he wouldn't [penetrate MV2]," but MV2 "felt him put his penis in [his] butt," and that it would hurt less if he calmed down. MV2 recognized that the Defendant was drunk. As a result, he was frightened to fight back. Later that night/morning, the Defendant came back into his room crying and appeared to MV2 to be more sober. The Defendant then apologized to MV2 and begged him not to tell anyone because his wife was pregnant at the time.

On or about June 2, 2020, MV1's and MV2's stepfather ("Stepfather") made a pretext phone call to the Defendant in coordination with Army Criminal Investigation Division Special Agents. When confronted about sexually assaulting MV1 and MV2, the Defendant stated, "Oh my god. What? [Stepfather's name], I am so sorry. What the fuck. I am so sorry, [Stepfather's name]. I don't remember. What the fuck. I should fucking kill myself." The Defendant also stated that he had "zero recollection of that night. I am so sorry. Fuck." The Defendant also claimed to be suicidal at the time,

2

have called the suicide hotline, and have messed up his truck. When Stepfather asked the Defendant if [the victims] were liars, the Defendant responded "No, I'm not saying they're liars."

At trial, additional witnesses will testify to also being sexually abused by the Defendant pursuant to Federal Rules of Evidence 404(b), 413, and 414, referred to herein as Victim #1, Victim #2[1], and Victim #3.

Defendant sexually abused Victim #1 for many years. The sexual abuse occurred frequently (described as around once a week), starting when she was in first grade (about 6 years old) and ending when she was approximately 14 years old.[2] Victim #1 reported that she would sometimes try to fight back. During these assaults, the Defendant touched her breasts, vaginal area, buttocks, arms, legs – "pretty much everywhere," kissed her, and performed oral sex on her against her will.

The Defendant also sexually assaulted Victim #2. The first assault occurred when she was approximately 7 years old, and a second incident occurred when she was about 8 or 9 years old.[3] Victim #2 recalled one incident when they were playing hide and seek. During the game, Victim #2 ended up in a tent alone with the Defendant. The Defendant began kissing and touching Victim #2 over her clothing, then touched her chest area and rubbed both her inner thigh and front genital area.

---

[1] As is outlined herein, this motion for a Rule 15 deposition is requested for Victim #2's testimony.

[2] Victim #1 was born in 1996; therefore, the abuse occurred in or about 2002 to 2010.

[3] Victim #2 was born in 1996; therefore, the abuse occurred in or about 2005 and 2006.

3

When Victim #2 asked the Defendant what he was doing, he told her it was part of the game and what happened should stay between them. The assault was interrupted when another person opened the tent and the Defendant "rolled off of her."

The Defendant also assaulted a 17-year-old, Victim #3.[4] While staying in the same house, the Defendant came into her bedroom, snuck into her bed, and started brushing up and down on her leg and buttocks with his hands. This assault was interrupted when another person came into the room and questioned what was going on.

### III. UNAVAILABILITY OF A MATERIAL GOVERNMENT WITNESS

On April 15, 2025, Victim #2, who is pregnant with a due date of June 15, 2025, informed the Government that her obstetrician just advised her that air travel on or about May 13, 2025, is against medical advice.[5] Victim #2 resides approximately 2,000 miles from Savannah, Georgia. Victim #2 is a necessary and vital Government witness as her testimony is highly relevant and material.

As has already been litigated, evidence that the Defendant committed sexual assaults in the past, including against Victim #2, is admissible to prove the Defendant's propensity to commit the charged offenses. *See* Doc. 108 (Order denying the Defendant's motion to exclude the Government's noticed prior acts evidence). The

---

[4] Victim #3 was born in 2000. Victim #3 stated the incident occurred around Christmas of 2017.

[5] When the trial date was scheduled, Victim #2 originally informed the Government that she would travel on May 13 to testify on May 14, 2025. She subsequently contacted the Government on April 15, 2025, to convey that the information she recently received from her medical doctor precludes her travel and express her unwillingness to travel as a result.

4

Defendant has pled not guilty and made no secret that he intends to defend himself by claiming that MV1 and MV2 are lying. He will attack their credibility. Doc. 96.[6] He has also already claimed that Victim #1, Victim #2, and Victim #3 are not being truthful and have motives to lie about their interactions with the Defendant. *Id*. at p. 6-7. In a case of this nature, for the Government to secure a conviction, the jury will need to find the testimony of MV1 and MV2 credible.

In a factually similar case, the Ninth Circuit found:

[t]he case against [the defendant] rested on the testimony of [two victims,] both children were very young at the time of the incidents, and two years had passed before [the defendant] was tried. [The defendant] attacked their credibility and suggested that there was not enough evidence to prove their allegations. That this case made use of the prior acts evidence in precisely the manner Congress contemplated strongly indicates that its admission was not an abuse of discretion.

*United States v. LeMay*, 260 F.3d. 1018, 1028-9 (9th Cir. 2001).

The need for Victim #2's testimony is further illustrated by the Defendant filing a motion to permit, as an exception to Federal Rules of Evidence Rule 412, cross-examination of MV1 regarding an alleged prior incident. Doc. 100. In that motion, the Defendant outlines his intent to cross-examine MV1 about the timing of his disclosure of his sexual abuse at the Defendant's hands. Doc. 100. The motion

---

[6] As another example, in a motion to compel discovery, the Defendant argued a need for Department of Family and Children Services records alleging the records "may include information about abuse perpetrated on the allege victims by family members, such as their mother and possibly one of their biological fathers." Doc. 72, p. 11. This request demonstrates the continued defense attack on the victims and their family asserting that the victims fabricated their claims of abuse. The prior sexual act testimony is crucial based on the defense posture of attacking the veracity of the victims and their family.

5

outlines the Defendant's plan to directly attack the MV1's credibility by questioning the basis for his delayed disclosure. This heightens the Government's need for the prior sexual act testimony.

Importantly, there is no other evidence available to the Government to prove the prior sexual assaults committed against Victim #2. *See United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (finding a factor favoring the prior sex act evidence admissibility is whether there is alternative less prejudicial evidence available to the Government.) Again, in *LeMay*, the Ninth Circuit held, "[t]he prosecutor's case rested on the testimony of [two minor victims]. No other scientific, forensic, medical, or psychological witness was available. [The defendant] had attacked the credibility of the boys and capitalized on the lack of eyewitness and expert testimony" in finding the prior sexual act testimony necessary and admissible to establish propensity. *LeMay*, 260 F.3d at 1029. However, "[p]rior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced; it must simply be helpful or practically necessary." *Id*.

While the Government acknowledges that there are other victims testifying about the Defendant's prior sexual abuse, the Government asserts Victim #2's testimony is especially important and critical to the Government's case. The sexual assault of Victim #2 was committed in similar ways to the offenses committed against MV1 and MV2. Like MV1 and MV2, the Defendant used an opportunity to be alone with Victim #2 to sexually assault her. He climbed on top of her and rubbed her thighs and her vaginal area. Both MV1 and MV2 reported the Defendant climbed on top of

6

them and also rubbed their thighs. With respect to Victim #2, MV1, and MV2, the Defendant assaulted them knowing others were close by and took a risk of not being caught. He told Victim #2 that what happened should stay between them, which is akin to him also asking MV2 not to tell anyone about his assault. Victim #2 was about the same age when she was assaulted by the Defendant as MV1 when MV1 was sexually assaulted by the Defendant. Significantly, the Defendant has repeatedly attacked the delayed disclosure by MV1 and MV2. The Defendant has used their delayed disclosures to support his claim of lies and fabrication. Victim #2's testimony directly refutes such claims. The Government asserts Victim #2's testimony is critical propensity evidence that supports the testimony of both MV1 and MV2; it is material and necessary for the Government's case.

## IV. FEDERAL RULE OF CRIMINAL PROCEDURE 15

Fed. R. Crim. P. 15 governs the authorization of depositions and their use at trial in lieu of live testimony.[7] Rule 15 permits a district court to authorize a deposition in a criminal case when exceptional circumstances exist. The moving party bears the burden of showing the existence of exceptional circumstances which justify the order of a Rule 15 deposition. *United States v. Drogoul,* 1 F.3d 1546, 1552 (11th Cir. 1993). In *Drogoul,* the Eleventh Circuit found that three factors guide the exceptional circumstances analysis: whether (1) the witness is unavailable to testify

---

[7] Federal Rule of Criminal Procedure 15(a) provides, in pertinent part: "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The Court may grant the motion because of exceptional circumstances and in the interest of justice."

7

at trial; (2) injustice will result because material testimony will be absent; and (3) countervailing factors render taking the deposition unjust to the nonmoving party. *Id*. at 1552-54.

While use of a deposition at trial may necessitate a conclusive showing of a witness' unavailability for trial, such is not required prior to taking a Rule 15(a) deposition. *Id*. at 1553. What is required is "a substantial likelihood ... that the proposed deponent will not testify at trial." *Id*. The movant may use affidavits or other materials to establish probable unavailability of witnesses. *Id*. Rule 15, however, does not explicitly require supporting affidavits, and representations made by counsel have been held sufficient to establish probable unavailability.[8] *See United States v. Farfan-Carreon,* 935 F.2d 678, 679-80 (5th Cir. 1991); *United States v. Des Marteau,* 162 F.R.D. 364, 368 (M.D.Fla. 1995).

Under Rule 15 procedure, parties depose a witness outside the presence of the presiding judge, and the judge later rules upon objections posed during the deposition. *See* Fed. R. Crim. P. 15(e) ("[A] deposition must be taken and filed in the same manner as a deposition in a civil action ....") and (g) ( "A party objecting to deposition testimony or evidence must state the grounds for the objection during the deposition.")

The Federal Rules of Evidence permit the admission of such depositions at trial. *See* Fed. R. Evid. 804(b)(1) (former testimony) and 807 (residual hearsay

---

[8] The Government requested Victim #2 obtain a letter from her medical doctor confirming travel on or about May 13, 2025, is against medical advice. Once received, if necessary, the Government will supplement this motion with the requested letter.

8

exception). Here, the testimony will be admissible under Rule 804 because the witness will be unavailable and the videotaped testimony will be taken in a manner that satisfies the requirements of Rule 804(b)(1). The testimony will also be admissible under Rule 807 because it will be offered as proof of material facts, it will be more probative on the points for which it will be offered than other evidence that the United States could procure through reasonable efforts, and the general purposes of the rules and the interests of justice will be served by its admission. *See Drogoul*, 1F.3d at 1552 (*citing White v. Illinois*, 502 U.S. 346, *Ohio v. Roberts*, 448 U.S. 56, 67-68, and Fed. R. Evid. 804(b)(1)) ("[I]t is well established that when a witness is unavailable to testify at trial, former testimony given by that witness may be introduced consistent with the defendant's constitutional rights.")

The deposition is justified as Victim #2 is an unavailable material witness, it would be an injustice to force the Government (including MV1 and MV2) to proceed to trial without the benefit of Victim #2's testimony, and there are no countervailing factors that would serve as an injustice to the Defendant, as he (if he so chooses) and his counsel will be present to confront and cross-examine Victim #2.

Government counsel spoke with counsel for the Defendant and advised her of the unavailability of the Government's witness and the request for a deposition. Counsel for the Defendant stated she has no objection to the Government's motion for a deposition and for the taking of the witness' deposition in Arizona on either April 25 or April 28, 2025, as further outlined below.

9

## SUGGESTED PROCEDURES TO BE UTILIZED

The United States submits that the following procedures should be utilized if this Court grants the instant motion.

### *Time and Place*

The deposition shall be taken at the United States Attorney's Office in Flagstaff, Arizona on either April 25 or April 28, 2025, commencing at 2:00 p.m local time.

### *Deposition Officer*

The deposition shall be taken before an employee of Griffin Reporters "reporter" or a similar court reporting company, subject to scheduling. The reporter shall serve as deposition officer and stenographer/transcriber.

### *Commencing the Deposition*

The reporter will operate the videotape recorder and/or camera and shall commence the deposition by stating on the video record the following:

a) the operator's name and business address;

b) the date, time and place of the deposition;

c) the caption of the case;

d) the name of the deponent; and

e) any stipulations by the parties.

Counsel shall identify on camera themselves and all persons present at counsel table. The oath must be administered to the witness on camera by the reporter.

### *Going "Off Camera"*

The reporter shall not stop the video recorder after the deposition commences until it concludes, except, however, that any party may request such cessation, which request will be honored unless another party objects. Each time the tape is stopped or started, the reporter shall announce the time on the record.

### *Camera on Deponent*

The videotape deposition shall depict the witness in a waist-up shot seated at a table. The camera and lens setting shall not be varied, except as necessary to follow natural body movements of the witness or to present exhibits or evidence which are being used during the deposition. At the conclusion of each counsel's questioning, the reporter shall show on camera all counsel and the deponent.

### *Objections*

Counsel for both parties shall object to a question after the question has been posed to the witness. Counsel shall then state their reasons for the objections. An index shall be made by the reporter showing the precise time when objections occur.

### *Closing of Deposition*

At the conclusion of the deposition, a statement must be made on camera that the deposition is concluded.

### *Stenographic Reporting*

The deposition shall be reported by stenographic (transcription) means in addition to video.

*Allocation of Costs*

The Government will bear the cost of the original of both the videotape deposition and stenographic copy. An original of each will be filed with the Court. The Government shall bear the cost of its own copies of the videotape deposition. The Government will also bear the reasonable travel and subsistence expenses of the Defendant and the Defendant's attorney to attend the deposition.[9] *See* Rule 15(d).

*Examination and Correction of Deposition Record*

After completion of the deposition, the deponent and all parties shall be given reasonable opportunity to review the videotape and any stenographic transcript of the deposition and to request in writing any changes or corrections in such records.[10]

*Certification of the Video Record*

No later than seven days before trial, reporter shall file a sworn statement that the videotape is an accurate and complete record of the deposition and that he/she has complied with all provisions of this stipulation applicable to said reporter.

*Custody of the Tape*

Upon the conclusion of the deposition, the reporter shall deliver the videotape in a sealed envelope identifying the case name and number, the deponent, and the

---

[9] The Defendant is not in custody. Pursuant to Rule 15(c)(2), the Defendant has the right to attend the deposition but is not obligated. "If the Government tenders the defendant's expenses as provide in Rule 15(d) but the defendant still fails to appear, the defendant—absent good cause—waives both the right to appear and any objection to the taking and use of the deposition based on that right."

[10] The Government anticipates that the deposition will likely not be lengthy and projects it to take approximately an hour for both direct and cross-examination.

date of the deposition to counsel for the Government, who shall file said sealed videotape with the Clerk of the Court in the Southern District of Georgia on or before May 1, 2025.

### *Editing the Tape*

An edited tape, eliminating material found by the court to be objectionable, shall be prepared, unless the parties provide, or the Court orders, another method for the suppression of the objectionable material. When objections are sustained, the question, answer, and comments of counsel shall be edited out of the videotape. If an objection is overruled, only the objection and attending comments are so edited.

### *Exhibits*

Any exhibits to be used during the deposition shall be marked prior to the commencement of videotaping.

### V. **ALTERNATIVELY, THE GOVERNMENT REQUESTS A TRIAL CONTINUANCE**.

As it outlined herein, the Government asserts Victim #2 is an essential and critical Government witness. As a result, if the Court denies the Government's request for a Rule 15 deposition, the Government respectfully requests a continuance of the trial date to a date on or after July 15, 2025, which will enable Victim #2 to travel to testify in person. The Defendant is not in custody. For the reasons outlined herein, the Government asserts that the ends of justice served by a continuance outweigh the best interests of the public and the Defendant in a speedy trial. Counsel for the Defendant has conveyed that the Defendant objects to a trial continuance.

## VI. CONCLUSION

For the foregoing reasons, the United States requests this Court grant the instant unopposed motion to take a videotape deposition of a material unavailable witness, or alternatively, in the ends of justice, continue the trial date.

Respectfully submitted,

TARA M. LYONS
ACTING UNITED STATES ATTORNEY

*/s/ Sherri A. Stephan*

Sherri A. Stephan
Assistant United States Attorney
PA Bar No. 78399

*/s/ Michael Z. Spitulnik*

Michael Z. Spitulnik
Assistant United States Attorney
Illinois Bar No. 6321559